VIENNA SCHOOL DISTRICT NO. 55, Petitioner, v. ILLINOIS EDUCA-
TIONAL LABOR RELATIONS BOARD *et al*, Respondents.

Fourth District   No. 4—87—0031

Opinion filed November 5, 1987.

504

Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd., of Decatur, for petitioner.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, and Valerie J. Peiler, Assistant Attorney General, of Chicago, of counsel), for respondent Illinois Educational Labor Relations Board.

Gregory J. Malovance and Rex L. Sessions, both of Winston & Strawn, of Chicago, for respondent Vienna Elementary Education Association.

JUSTICE McCULLOUGH delivered the opinion of the court:
The Vienna Elementary Education Association, IEA/NEA (Association), exclusive bargaining agent for Vienna teachers in Vienna

School District No. 55 (District), filed charges with the Illinois Educational Labor Relations Board (Board) alleging the District's failure to provide annual incremental salary increases constituted a violation of the Illinois Educational Labor Relations Act (Act). The Board found the District in violation of the Act for unfair labor practices. (Ill. Rev. Stat. 1985, ch. 48, pars. 1714(a)(1), (a)(5).) On appeal, the District maintains that it was not required to implement salary increments pursuant to an expired contract during collective bargaining. We disagree and affirm the Board's order.

The facts involved were not in dispute. The only issue pending was an interpretation of the "status quo" with respect to salary subsequent to expiration of the Association's employment contract. The District argues the status quo is the actual dollar amount paid under the terms of the existing contract, while the Association maintains it is the salary structure.

In September of 1984, the District and Association entered into their first collective-bargaining agreement under the Act. This agreement was effective September 10, 1984, through one day prior to the beginning of the 1985-86 school term. The agreement incorporated a salary schedule which provided for incremental increases in salary. At the beginning of the new school year, teachers moved vertically along the salary schedule to reflect an additional year of experience and horizontally if they had acquired any additional education. This particular method of annual salary increments had been utilized by the District for the past 10 years and was automatically implemented prior to the opening of the new school term.

Prior to the expiration of the 1984-85 agreement, the District and Association negotiated a new contract. Negotiations for the 1985-86 contract, however, were still in progress at the beginning of the new school term. On August 15, 1985, eight days before school began, the teachers made their first salary demand. The District, however, refused to implement the annual step increments and compensated the teachers at the previous year's salary. The District continued to compensate the teachers at the 1984-85 rates until January of 1986, when negotiations for the 1985-86 collective-bargaining agreement were finally concluded. The agreement provided for step increments to be paid retroactive to the beginning of the school year.

In its order, the Board stated there was a duty to maintain the status quo during contract negotiations. Status quo, in this particular context, is a subjective determination requiring a consideration of the particular facts of the case involved. Status quo has been de-

fined as a teacher's reasonable expectations deemed from the express provisions of the expired agreement and any relevant bargaining history and past practice. In light of the salary schedule contained in the 1984-85 agreement, and the past practice of automatically implementing annual step increments for additional education and experience, the Board found the Vienna teachers had a reasonable expectation of receiving the increase at the beginning of the 1985-86 school term. The Board further noted that withholding the expected advancements after the teachers opted to engage in collective bargaining might foster the impression of employer retaliation to collective bargaining. Thus, the Board concluded that the District had violated the Act by unilaterally altering the status quo during contract negotiations.

■■ Upon review, the factual findings and conclusions of an administrative agency shall be held *prima facie* true and correct. (*Board of Education v. Illinois Educational Labor Relations Board* (1986), 143 Ill. App. 3d 898, 493 N.E.2d 1130.) The reviewing court may not reweigh evidence or make an independent determination of facts, and shall only interfere if authority is exercised in an arbitrary or capricious manner or the decision is contrary to the manifest weight of the evidence. (*Board of Education v. Illinois Educational Labor Relations Board* (1986), 143 Ill. App. 3d 898, 493 N.E.2d 1130.) The reviewing court is not, however, bound by the administrative agency's interpretation of the law.

The question presented here is one of first impression in Illinois. Consequently, we turn to the precedent of other jurisdictions to guide our interpretation of the State Act.

The Illinois Educational Labor Relations Act was adopted to "promote orderly and constructive relations between all educational employees and their employers" and to alleviate situations injurious to the public which are caused by educational employee-employer disputes. (Ill. Rev. Stat. 1985, ch. 48, par. 1701.) An educational employer commits an unfair labor practice in violation of the Act where he interferes, restrains, or coerces employees in the exercise of rights guaranteed under the Act (Ill. Rev. Stat. 1985, ch. 48, par. 1714(a)(1)), or where it refuses to bargain collectively in good faith (Ill. Rev. Stat. 1985, ch. 48, par. 1714(a)(5)).

■■ ■ In *NLRB v. Katz* (1962), 369 U.S. 736, 8 L. Ed. 2d 230, 82 S. Ct. 1107, the United States Supreme Court established that an employer's unilateral alteration of prevailing terms and conditions of employment under negotiation during the course of bargaining constitutes an unlawful refusal to bargain. (*NLRB v. Katz* (1962),

369 U.S. 736, 743-47, 8 L. Ed. 2d 230, 236-38, 82 S. Ct. 1107, 1111-13.) "Unilateral" changes are those alterations implemented without prior negotiation to impasse. (*NLRB v. Katz* (1962), 369 U.S. 736, 8 L. Ed. 2d 230, 82 S. Ct. 1107.) Such changes are prohibited so the status quo might be maintained until new terms and conditions of employment are arrived at through bilateral negotiation and by mutual agreement. (*NLRB v. Katz* (1962), 369 U.S. 736, 8 L. Ed. 2d 230, 82 S. Ct. 1107; see also *Galloway Township Board of Education v. Galloway Township Education Association* (1978), 78 N.J. 25, 393 A.2d 218.) Unilateral changes are unlawful because they frustrate the "statutory objective of establishing working conditions through bargaining." *NLRB v. Katz* (1962), 369 U.S. 736, 744, 8 L. Ed. 2d 230, 236, 82 S. Ct. 1107, 1112.

■ A term or condition of employment is something provided by an employer which intimately and directly affects the work and welfare of the employees and which has become a mandatory subject of bargaining. (See *Board of Education v. Bernards Township Education Association* (1979), 79 N.J. 311, 399 A.2d 620.) Typical terms and conditions include: wages (*General Motors Acceptance Corp. v. NLRB* (1st Cir. 1973), 476 F.2d 850), health insurance, pension contributions (*Stone Boat Yard v. NLRB* (9th Cir. 1983), 715 F.2d 441, *cert. denied* (1984), 466 U.S. 937, 80 L. Ed. 2d 459, 104 S. Ct. 1910), life insurance, medical insurance (*In re Appeal of Cumberland Valley School District* (1978), 483 Pa. 134, 394 A.2d 946), and hours (*School Board v. Palowitch* (Fla. App. 1979), 367 So. 2d 730). During collective bargaining, an employer may not take unilateral action on these subjects absent an impasse in negotiations.

■ A term or condition of employment must be an established practice to constitute the status quo. The test for determining whether a specific practice is sufficiently established is objective. (See *Plasticrafts, Inc. v. NLRB* (10th Cir. 1978), 586 F.2d 185.) With respect to wage increases, the focus is whether the status quo would have been clearly apparent to an objectively reasonable employer at the time in question. *Plasticrafts, Inc. v. NLRB* (10th Cir. 1978), 586 F.2d 185.

■ Status quo requires the further consideration of the amount of discretion vested in an employer with respect to an established practice. (See *Gossen Co. v. NLRB* (7th Cir. 1983), 719 F.2d 1354.) Where an employer engages in merit reviews at regular intervals with a view to granting preestablished salary increases, this is sufficient to constitute a status quo. When, however, the timing of reviews and amounts of increase is within the sole discretion of the

employer with no established practice, such evaluations could not constitute a status quo. *Gossen Co. v. NLRB* (7th Cir. 1983), 719 F.2d 1354.

■ Finally, in determining the status quo, it is necessary to consider the reasonable expectations of the employees in the continuance of existing terms and conditions of employment. (*Indiana Education Employment Relations Board v. Mill Creek Classroom Teachers Association* (Ind. 1983), 456 N.E.2d 709.) Where employees receive regular salary increases based upon years of service or additional education, it is reasonable for employees to expect these increments even though negotiations for a new contract are still pending. *Indiana Education Employment Relations Board v. Mill Creek Classroom Teachers Association* (Ind. 1983), 456 N.E.2d 709.

In a situation factually analogous to this case, the Indiana Supreme Court found that failure to grant teachers annual salary increments pending negotiations constituted an unfair labor practice. The court specifically noted:

> "Other jurisdictions have found that school corporations are legally required to pay wage increments which are part of an existing contract in order to maintain the status quo pending negotiation of a new contract. *Nassau Teachers Association v. School Board of Nassau County*, 8 EPER par. 13206 (Fla. 1982); *In the Matter of Communications Workers of America & State of New Jersey*, 7 NJPER par. 12235 (N.J. 1981); *California School Employees Association v. Davis Unified School District*, 4 PERC par. 11031 (Cal. 1980); *Springfield Board of Education v. Springfield Education Association*, 47 Ill. App. 3d 193, 5 Ill. Dec. 374, 361 N.E.2d 697, 95 LRRM 3000 (4th DCA 1977); *NLRB v. Allied Products Corp.*, 548 F.2d 644, 94 LRRM 2433 (6th Cir. 1977)." (*Indiana Education Employment Relations Board v. Mill Creek Classroom Teachers Association* (Ind. 1983), 456 N.E.2d 709, 712.)

See also *Galloway Township Board of Education v. Galloway Township Education Association* (1978), 78 N.J. 25, 393 A.2d 218 (failure to pay annual step increments during collective bargaining constitutes refusal to bargain).

■ The salary increments herein were clearly a term and condition of employment which were unilaterally altered during contract negotiations. All parties agreed that the alteration occurred without prior negotiation to impasse. The step salary increments had been utilized by the District for some 10 years. It was an established practice. The evaluations were completely objective, based upon

years of experience and education attained. The evaluations were conducted annually prior to the beginning of each school term. There was little discretion afforded the District. Consequently, it was reasonable for the Vienna teachers to expect salary increases prior to the beginning of the 1985-86 school year based upon education and experience. The status quo required such yearly evaluations. By withholding the salary increments, the District unilaterally altered the status quo. The precedent from other jurisdictions is in accord.

The District relies upon *Board of Cooperative Educational Services v. New York State Public Employment Relations Board* (1977), 41 N.Y.2d 753, 363 N.E.2d 1174, for the proposition that discontinuance of automatic annual salary increments during negotiations does not constitute an unfair labor practice. Subsequent to the case, however, the legislature amended its labor provisions to conform to the majority rule. (See N.Y. Civ. Serv. Law §209—a(1) (McKinney 1983).) New York precedent has since held it is an improper practice to discontinue negotiable terms and conditions of employment prior to impasse. *In the Matter of Cobleskill Central School District* (1984), 105 A.D.2d 564, 481 N.Y.S.2d 795.

The policy underlying the Act, as well as the weight of authority from other jurisdictions, supports the concept of status quo which includes an evaluation of past history, past bargaining practice, existing contract terms and the reasonable expectations of the employees. This concept prevents unfair bargaining tactics on behalf of the employer and promotes effective negotiations. We note, however, that this concept of status quo involves a subjective determination and, as such, must be made on a case-by-case basis.

Affirmed.

SPITZ, P.J., and GREEN, J., concur.